THE STATE OF CONNECTICUT *vs.* JULIA SAWYER.

Second Judicial District, Norwich, April Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

The taking of property from the owner's possession and without his consent, although undoubtedly a trespass, is not larceny unless accompanied by a felonious intent, viz: an intent to permanently deprive the owner of its use, and to wrongfully appropriate the property to the use of the taker.

An entire lack of secrecy or concealment in the appropriation, and a belief that the owner was pecuniarily liable to the taker, are circumstances which tend to refute the claim of a felonious taking.

A landlady who took possession of a tenant's handbag and declined to give it up until reparation had been made for damage done to the room by the tenant, is not guilty of larceny, there being color of right or excuse for the act.

Argued April 28th—decided June 10th, 1920.

INFORMATION for stealing a handbag and its contents of the value of $25, brought to the Criminal Court of Common Pleas in New London County and tried to

the jury before *Waller, J.;* verdict and judgment of guilty, and appeal by the accused. *Error and cause remanded.*

The appeal assigns error in the admission of certain testimony, in portions of the charge to the jury, and in the court's denial of a motion to set aside the verdict as against the evidence, which is made a part of the record. The facts appear in the opinion.

*Clayton B. Smith* and *Charles L. Stewart,* for the appellant (the accused).

*Charles B. Whittlesey,* Prosecuting Attorney, for the appellee (the State).

CASE, J. There was little dispute as to the facts, and none at all as to any which affect the ultimate and decisive matter of intent. Making allowance, however, for certain unimportant differences in the testimony, the jury were warranted in finding no facts less favorable to the defendant than these:—

The defendant owned and personally managed a lodging-house in New London, where one Beatrice Burton, a girl employed during the day in a local drug store, engaged and occupied a room, paying a week's rent in advance and bringing with her a handbag containing certain of her possessions. Two or three days after this tenancy began, the girl accidentally spilled or spattered on the wall-paper and woodwork of her room some liquid dye known as "colorite." She said nothing of this to the defendant, who next day discovered the stains in her absence, and removed from the room the bed clothing and the handbag with its contents, leaving a note for her lodger which called attention to the stained condition of the wall and woodwork, and demanded $5 as payment for the damage so

caused. Miss Burton found the note upon her return from work that evening, and at once sought out the defendant, who freely admitted having taken away the missing articles and declined to give up the girl's property until reparation had been made for the damage which she acknowledged having caused to the room. It was thereupon agreed and understood between them that Miss Burton should pay the defendant $5 within a day or two thereafter in full satisfaction for the damage she had done, and the defendant then returned the bed clothing to the room, but still declined to restore the handbag and its contents until the promised payment should be made. Miss Burton remained in the house that night; but without again seeing or communicating any change of mind or purpose to the defendant, she concluded next day not to make the payment as agreed, and vacated the room. She then went with her story to an attorney who called upon the defendant and demanded the return of her property, but the defendant, who then first learned of the girl's change of intention, refused to surrender it until the $5 should be paid to her as promised.

The simpler elements of larceny are undeniably present upon these facts. There was a taking and removal of the property from the owner's possession, and without her consent. But all this in itself discloses nothing more serious than a trespass, and the vital question is as to the taker's concurrent intent. Was it the felonious one to permanently deprive the owner of, and to wrongfully appropriate to the taker's own use, the property removed or any portion of it? Unless the defendant's act fills the full measure of these requirements, it was not theft.

In uncovering her actuating purpose, two circumstances become important in their combined significance: an entire lack of attempt at secrecy or conceal-

ment, and the obvious fact that in some measure, at least, there was ground for her belief that the girl had become pecuniarily liable for an injury done to the room and either designedly or by inadvertence not reported to her. This gets support as a real rather than a fancied grievance, from the apparent readiness of the girl to concede both her fault and its substantial character when charged with the injury, and from her unquestioning acceptance of the proposed terms of settlement. The insinuation of the State that the taking was to coerce or extort money to satisfy a groundless and unjust claim, is thus refuted by the evidence, and takes with it from the case all basis for a claim that the defendant intended to work a fraud upon Miss Burton, or otherwise to injure her.

While the elimination of these features still leaves the defendant's conduct without justification as a trespass, it leaves, on the other hand, but scant material from which to justify an inference of the felonious intent—a thief's design to steal—necessary to brand her act as larceny. The cases, and the text-writers in their comments upon them, draw some fine and exceedingly technical distinctions in dealing with the character of the requirements necessary to make the intent felonious where the taking involves something less than an unqualified and permanent appropriation of the thing actually taken; and they are not altogether harmonious in either reasons or results. This fact is recognized in *Commonwealth* v. *Mason*, 105 Mass. 163— a case strongly relied upon by the State, but easily distinguishable from this in an established fraudulent plan to take and conceal the property for the very purpose of provoking the offer of a reward for its return and dishonestly profiting by it,—where the court concedes that it "may be difficult to reconcile all the decisions in England and this country, upon the question

as to what intent makes a taking larceny, when the intent is not to deprive the owner wholly of his property." p .167.  But we think no well reasoned case of this class will be found to establish a felonious intent where the taking does not involve either a palpable fraud, as in the Massachusetts case just referred to, or some motive equally conclusive of the taker's bad faith and purpose.  It is somewhat suggestive of this view to find at no very remote day an English court complaining that "the definitions of larceny are none of them complete," in that the best of them "is defective, in not stating what the meaning of 'felonious' in this definition is.  It may be explained to mean, that there is no colour of right or excuse for the act." *Regina* v. *Holloway* (1849), 2 Car. & Kir. 942, 946.

We have already seen that an inspection of the facts excludes the suggestion of any fraudulent purpose on the defendant's part, and negatives any intention by her to take or make use of the property save as an instrument to enforce the payment of her claim.  If we apply to these conditions the manifestly just test of the English case referred to, it cannot be said that there was "no colour of right or excuse for the act," within the fair and liberal meaning of these terms which their use in this connection demands.  One is not guilty of theft without consciousness of the wholly unlawful and inexcusable nature of his act.  The grave character of the necessary intent makes that clear.  His belief in his right to take the thing involved, even though a mistaken belief, or one entertained upon insufficient grounds, is essentially inconsistent with the presence of an intent to steal, and the terms "colour of right or excuse" obviously demand a construction consonant with that point of view.  Perhaps influenced to the statement more by a spirit of natural justice than from any unanimity or convincing encouragement in the

reported cases, one of our most widely approved authorities in this field of the law says that "one who takes another's goods to compel him, though in an irregular way, to do what the law requires him to do with them—namely, pay his debt—is on no legal principle a felon, though doubtless he is a trespasser. . . . In reason, one has no more privilege to steal the effects of his debtor than those of any other person. But a trespass is not theft, except when done with felonious intent. And he who carries away a thing openly, and not clandestinely, to enforce a just claim, not for fraud, not to injure the owner, but to compel him to do what the law requires, is not a thief, whatever the extent of the wrong viewed otherwise." 2 Bishop's New Crim. Law (8th Ed.) § 849, p. 496.

We think these reasons are of particular application to the situation which the record presents, that the verdict of guilty was not warranted by the evidence, and that the motion to set it aside should have been granted.

Since it is apparent that all the evidence which could warrantably affect the result was produced upon the trial, we must regard this as a final disposition of the case. It is unnecessary therefore to discuss the alleged errors in the charge of the court and in its rulings upon evidence.

There is error, the judgment is set aside and the cause is remanded to the Criminal Court of Common Pleas for further proceedings according to law.

In this opinion the other judges concurred.