## STATE OF CONNECTICUT *v.* PAUL VARSZEGI (10818)

O'CONNELL, FOTI and CRETELLA, Js.

Argued October 28—decision released December 3, 1993

*Paul Varszegi,* pro se, the appellant (defendant).

*David J. Sheldon,* deputy assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *Nicholas Bove,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant was initially charged with larceny in the first degree in violation of General Statutes §§ 53a-122 (a) (2)[1] and 53a-119,[2] and criminal coercion in violation of General Statutes § 53a-49 (a) (2). Following a jury trial, he was convicted of the lesser included offense of larceny in the third degree in violation of General Statutes § 53a-124[3] and acquitted of the coercion charge. The defendant appeals from his larceny conviction. The defendant claims that (1) there was insufficient evidence to support the larceny conviction and (2) the trial court's jury instruction violated his constitutional rights to due process of law and a fair trial. We reverse.

The jury could have reasonably found the following facts. The defendant was the landlord of commercial

---

[1] General Statutes § 53a-122 (a) (2) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

[2] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds property from an owner. . . ."

[3] General Statutes § 53a-124 provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds one thousand dollars . . . ."

property at 1372 Summer Street in Stamford. One of the defendant's tenants was Executive Decisions Support, Inc., a computer software company headed by Catherine Topp. Topp, in her capacity as president of the company, personally signed the lease with the defendant. The lease contained a default clause authorizing the defendant to enter the tenant's premises, seize the tenant's personal property and sell it as a way of recovering unpaid rent or other charges.[4] The defendant claimed Topp had failed to pay her rent for March, April and May, 1990.

On Saturday May 5, 1990, the defendant entered Topp's office by picking the lock. He proceeded to remove two of Topp's computers and attached printers. On Monday May 7, 1990, Topp arrived at work and noticed that the lock on her office door had been tampered with. Upon entering and noticing her computers were missing, Topp called the Stamford police. After the completion of an initial investigation at the scene by Officer Frank Pica, Topp telephoned the defendant, who admitted that he had taken her computers as a consequence of her failure to pay three months rent. Pica then took the phone from Topp and identified himself. The defendant advised Pica that he was Topp's landlord and expressed his belief that his actions were

---

[4] Paragraph twelve, section (b) of the defendant's lease reads as follows: "*If Lessee defaults under this Lease, Lessor may without further notice to the Lessee: (i) terminate this Lease; (ii) re-enter and take possession of the Leased Premises, remove all persons and property therefrom and disconnect any telephone lines installed for the benefit of Lessee, all without being deemed to have committed any trespass; (iii) impound Lessee's property and sell it at auction or private sale, applying the proceeds thereof to any unpaid rent or other charges, including costs of collection, and holding the Lessee responsible for any deficiency;* (iv) recover, in addition to any rent and other charges already due and payable, all rent for the entire unexpired balance of the Term of this Lease and all costs incurred by Lessor to recover such sums from Lessee, including reasonable attorney's fees. All rights and remedies of Lessor under this Lease shall be cumulative and in addition to any other rights or remedies available at law or in equity." (Emphasis added.)

proper and legal. Upon hearing this, Pica expressed doubt as to the lawfulness of the defendant's conduct, at which point the defendant reiterated his belief that his actions were in accordance with his lease.

At this point, Pica called his supervisor, Sergeant Ralph Geter. Geter arrived shortly thereafter and telephoned the defendant, who again identified himself as Topp's landlord and again admitted having taken the computers in question. Geter informed the defendant that he had no right under the law to confiscate Topp's computer equipment and that he should make arrangements with Topp to return the goods. No such arrangements were made and the defendant sold the computers on May 23, 1990.

On May 25, 1990, a detective contacted the defendant and inquired whether they could meet to discuss the matter as part of his investigation. As he had from the start, the defendant admitted during this telephone conversation that he had taken and retained the computers pursuant to his lease. On June 6, 1990, the defendant met with the detective at the Stamford police station and was asked for a formal statement. The defendant requested an attorney and the conversation ended. The defendant was subsequently arrested on June 28, 1990.

The defendant first claims that the state did not prove beyond a reasonable doubt that he was guilty of larceny. It is fundamental jurisprudence that the state bears the burden of proof beyond a reasonable doubt of each essential element of the crime charged. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Griffin,* 175 Conn. 155, 162, 397 A.2d 89 (1978).

"When a claim on appeal challenges the sufficiency of the evidence, we undertake a two-part task. We first review the evidence presented at the trial, construing

it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *King,* 216 Conn. 585, 600, 583 A.2d 896 (1990); *State* v. *Glenn,* 30 Conn. App. 783, 791, 622 A.2d 1024 (1993).

Larceny is defined in General Statutes § 53a-119 as follows: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." This crime has three elements and all three must be established beyond a reasonable doubt. It must be shown that (1) there was an intent to do the act complained of, (2) the act was done wrongfully, and (3) the act was committed against an owner. This appeal focuses on the elements of "intent" and "wrongfully." Because larceny is a specific intent crime, the state must show that the defendant acted with the subjective desire or knowledge that his actions constituted stealing. A specific "intent to deprive another of property or to appropriate the same to himself . . . is an essential element of larceny . . . and as such must be proved beyond a reasonable doubt by the state." (Internal quotation marks omitted.) *State* v. *Fernandez,* 198 Conn. 1, 20, 501 A.2d 356 (1985).

"The 'animus furandi,' or intent to steal, is an essential element of the crime of larceny at common law." 50 Am. Jur. 2d, Larceny § 35 (1970). Hornbook law articulates the same premise. "Since the taking must be with felonious intent . . . taking under a bona fide claim of right, however unfounded, is not larceny. . . . [A]lthough ignorance of the law is, as a rule, no excuse, it is an excuse if it negatives the existence of a specific

intent. Therefore, even if the taker's claim of right is based upon ignorance or mistake of law, it is sufficient to negative a felonious intent. A fortiori, a mistake of fact, if it is the basis of a bona fide claim of right, is sufficient." J. Miller, Handbook of Criminal Law (1934) § 114 (a), p. 367; see also 2 W. LaFave & A. Scott, Substantive Criminal Law (1986) § 8.5 (a), p. 358.

"One who takes property in good faith, under fair color of claim or title, honestly believing that . . . he has a right to take it, is not guilty of larceny even though he is mistaken in such belief, since in such case the felonious intent is lacking. . . . The general rule applies . . . to one who takes it with the honest belief that he has the right to do so under a contract . . . ." 50 Am. Jur. 2d 203, Larceny § 41 (1970).

Particularly apposite to the present case is the comment in American Jurisprudence that, "[i]t is generally held that because of lack of a felonious intent, one is not guilty of larceny who, in the honest belief that he has the right to do so, openly and avowedly takes the property of another without the latter's consent, as security for a debt bona fide claimed to be due him by the owner, or even to apply or credit it to the payment thereof." Id., 205–206.

"A defendant who acts under the subjective belief that he or she has a lawful claim on property lacks the required felonious intent to steal. Such a defendant need not show his mistaken claim of right was reasonable, since an unreasonable belief that he had a right to take another's property will suffice so long as he can establish his claim was made in good faith." 50 Am. Jur. 2d, Larceny § 41 (1993 Sup.), relying on *People* v. *Romo*, 220 Cal. App. 3d 514, 269 Cal. Rptr. 440 (1990).

Connecticut case law is consistent with other jurisdictions and the text writers quoted herein. As far back as 1902, our Supreme Court recognized that the mere

taking of another's property was not sufficient to prove larceny. The taking must be accompanied by a felonious intent to deprive the owner of its use. If a person takes property in the honest, though mistaken belief, that he has a right to do so, he has not committed larceny. *State* v. *Main,* 75 Conn. 55, 57, 52 A. 257 (1902).

Our Supreme Court has also considered the scenario of a landlord who, like the defendant in the present case, seizes his tenant's property as security for a debt. *State* v. *Sawyer,* 95 Conn. 34, 35–36, 110 A. 461 (1920). In *Sawyer,* a landlady took possession of a tenant's handbag on the ground that the tenant was liable to her for damage done to the demised premises. The court held that the defendant had not committed a larceny because she believed that her claim justified refusal to return the handbag unless the tenant paid for the damage. Id., 38. The court based its decision on the absence of felonious intent and the presence of a color of right. The court held that "[o]ne is not guilty of theft without consciousness of the wholly unlawful and inexcusable nature of his act. The grave character of the necessary intent makes that clear. His belief in his right to take the thing involved, *even though a mistaken belief, or one entertained upon insufficient grounds,* is essentially inconsistent with the presence of an intent to steal, and the terms 'colour of right or excuse' obviously demand a construction consonant with that point of view." (Emphasis added.) Id. The *Sawyer* court supported its decision with a citation from 2 Bishop's New Crim. Law (8th Ed.) § 849, p. 496. " '[O]ne who takes another's goods to compel him, though in an irregular way, to do what the law requires him to do with them—namely, pay his debt—is on no legal principle a felon, though doubtless he is a trespasser. . . . In reason, one has no more privilege to steal the effects of his debtor than those of any other person. But a trespass is not theft, except when done

with felonious intent. And he who carries away a thing openly, and not clandestinely, to enforce a just claim, not for fraud, not to injure the owner, but to compel him to do what the law requires, is not a thief, whatever the extent of the wrong viewed otherwise.' " *State* v. *Sawyer,* supra, 39.

In the present case, the defendant claims that he did not possess the specific felonious intent to commit larceny but rather acted in good faith pursuant to a lease that gave him, as the landlord, authority to enter the premises, impound the lessee's property, sell it and apply the proceeds to the unpaid rent or other charges. The state claims that it introduced evidence from which the jury could reasonably have inferred that the defendant intended to steal the computer equipment.

We hold that there was insufficient evidence introduced at trial to prove that the defendant knew that he had no right to take the lessee's computers. During the initial phone conversation with Topp, the defendant made no attempt to conceal either his identity or that he had in fact taken the computers. The defendant emphatically stated during this conversation that the default clause in the lease provided him with the authority to impound her property based on her failure to pay the three months rent due. Moreover, the officers testifying at trial each stated that the defendant never wavered from his contention that his actions were lawful, even when faced with the threat of criminal prosecution. The defendant's unfaltering and consistent statements to all parties involved that he acted in good faith in seizing Topp's computers were not contradicted by the testimony of any witness.

The state cites *State* v. *Banet,* 140 Conn. 118, 98 A.2d 530 (1953), in support of its claim that the defendant possessed the requisite criminal intent. In *Banet,* the defendant, a used car dealer, signed over to a finance

company to whom he was indebted all of his interest in a number of retail sales installment contracts. Id., 120–21. After two purchasers defaulted, the defendant was found guilty of wrongfully repossessing their vehicles in violation of the assignment agreement. In rejecting the defendant's claim that he believed in good faith that he had a right to retake the automobiles, the court held that the state had introduced evidence showing the defendant knew that his actions were unlawful. This knowledge was evidenced by the assignment agreement itself, which explicitly transferred title to the automobiles to the finance company. Furthermore, the court viewed the finance company's refusal to sign a postassignment agreement whereby the defendant attempted to retain the right to repossess the vehicles as strong proof that the defendant knew that his actions were illegal. Id., 122–23.

Unlike *Banet,* the defendant's claim that he acted in good faith was not countered by any evidence, direct or circumstantial, that he intended to steal the computers. The state contends, however, that the defendant's weekend entry into Topp's office by picking the lock and his subsequent impounding of the computers without leaving a note was enough evidence from which the jury could have reasonably found the requisite intent. Significantly, none of the foregoing evidence contradicted the defendant's claim that he acted in good faith in taking the computers based on the default clause in the lease. In fact, the defendant testified that he entered the office on the weekend so as to avoid an awkward confrontation. When asked by Topp where the computers were on the following Monday, the defendant concealed nothing. Notwithstanding the state's claim to the contrary, the record is devoid of any evidence that the jury could have reasonably relied upon in finding the defendant acted with the requisite culpability. The state's bald and conclusory assertion

that the jury simply rejected the defendant's consistent claim that the rental agreement served as justification for his action is not enough to prove beyond a reasonable doubt the specific intent requirement for larceny.

Moreover, the state contends that even if the defendant believed in good faith that he had the right to take his tenant's personal property to secure overdue rent payments, once he was told by three members of the police force that he was acting illegally, he could no longer reasonably maintain an honest though mistaken belief that he was acting lawfully. We do not agree. Police officers are not imbued with the authority or prerogative to declare provisions of civil contracts void, thereby converting good faith to a felonious intent.

In its brief, the state argues that the passage of time since the *Sawyer* case has dimmed its effect and suggests that we disregard it as a precedent. Even if we agreed that in some instances time may diminish a precedent, the present case would not be an appropriate situation in which to apply such theory. The felonious taking requirement has not given way to more modern legal concepts. "Although the present statute has broadened the scope of larceny, the element of intent has been retained from the prior statute and case law. Larceny continues to require 'the existence of a felonious intent in the taker . . . .' " *State* v. *Marra,* 174 Conn. 338, 342, 387 A.2d 550 (1978). Furthermore, in drafting General Statutes § 53a-119, the penal code commission expressly referred to *Sawyer*. "The question of wrongfulness is meant to incorporate and to be read in the light of the common law standards enunciated in such cases as . . . *State* v. *Sawyer,* [supra]." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes (1969), p. 39.

We agree with the defendant that there was insufficient evidence to support his conviction of larceny in the third degree. Because our decision on the defendant's first claim is dispositive of the appeal, we do not reach the defendant's second claim.

The judgment is reversed and the case is remanded with direction to render judgment of not guilty of larceny in the third degree.

In this opinion the other judges concurred.