# STATE OF CONNECTICUT *v.* BRIAN DELL
## (AC 25709)

Flynn, C. J., and Harper and Pellegrino, Js.

Argued February 10—officially released April 18, 2006

*Darcy McGraw*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *John J. Davenport*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Brian Dell, appeals from the judgment of conviction, rendered following a trial to the court, of one count of larceny in the first degree by embezzlement in violation of General Statutes § 53a-122 (a) (2).[1] The defendant claims that the evidence did not support the court's finding that he acted with the mental state required for the commission of the crime. We affirm the judgment of the trial court.

The parties agree, and the evidence reflects, that the nonprofit Connecticut Junior Soccer Association (association) promotes the sport of soccer among Connecticut's youth. Players pay registration fees when joining the association and, in return, play on organized soccer teams affiliated with the association. Generally, players receive uniforms, instruction from coaches and the opportunity to participate in officiated local and national tournaments.

---

[1] The court sentenced the defendant to a term of incarceration of ten years, execution suspended after three years and nine months, and five years of probation. By substitute information, the state also charged the defendant with twenty-eight counts of forgery in the second degree in violation of General Statutes § 53a-139 (a) (1). The court dismissed one of these counts during the trial and, after the court found the defendant guilty of the remaining counts, the court granted the defendant's motion in arrest of judgment with regard to the remainder of the forgery counts. Accordingly, these charges are not at issue in this appeal.

The statewide association is headed by a president and is comprised of various districts within the state, each of which is headed by a vice president. During the relevant time period, from 1996 through 1999, Paul Duffy was the vice president of the south central district (district). The defendant was the treasurer of the district; his duties included handling the district's finances and maintaining accurate records of the same. These records were reviewed by the association, which had a financial relationship with the district. Each year, the district collected registration fees from players on both its regular and premier teams. The association retained 85 percent of these moneys to pay insurance and other operating costs and returned the remaining 15 percent of these moneys to the district, which had an annual operating budget of approximately $130,000. The district held checking accounts and certificate of deposit accounts.

The court's findings of fact[2] may be summarized as follows. At some point during the defendant's tenure as treasurer, several checks drawn on the district's checking accounts were returned due to insufficient funds. Duffy became aware of the problem, and the defendant explained to Duffy that he inadvertently had written the checks on an old account. Financial problems continued to come to Duffy's attention. By using false financial reports that he prepared, the defendant misrepresented the district's finances to Duffy and the association's president; the defendant represented that district accounts were larger than they actually were. The defendant withdrew funds from district accounts, at times by signing Duffy's name on district checks without his knowledge or authorization. The defendant wrongfully appropriated a significant amount of district funds, in the tens of thousands of dollars, to himself.

[2] The court rendered an oral decision and, in compliance with Practice Book § 64-1, subsequently signed a transcript of its decision.

Contrary to the defendant's representations, the defendant did not appropriate these funds to himself with a belief that he was entitled to them, but with an intent to steal.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *McCoy*, 91 Conn. App. 1, 3, 879 A.2d 534, cert. denied, 276 Conn. 904, 884 A.2d 1026 (2005).

General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ." General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . . (1) [e]mbezzlement. A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody. . . ."

The defendant does not contest that he appropriated to himself the moneys at issue, which were in his care or custody, or that he appropriated these moneys for his benefit. The issue is whether the state proved beyond a reasonable doubt the essential element of intent. "Because larceny is a specific intent crime, the state must show that the defendant acted with the subjective desire or knowledge that his actions constituted stealing." *State* v. *Varszegi*, 33 Conn. App. 368, 372, 635 A.2d 816 (1993), cert. denied, 228 Conn. 921, 636 A.2d 851 (1994). "Larceny involves both taking and retaining. The criminal intent involved in larceny relates to both aspects. The taking must be wrongful, that is, without color of right or excuse for the act . . . and without the knowing consent of the owner. . . . The requisite intent for retention is permanency." (Internal quotation marks omitted.) *State* v. *Calonico*, 256 Conn. 135, 162, 770 A.2d 454 (2001).

The defendant testified that he appropriated the moneys to himself, believing that he was entitled to the moneys as compensation for services that he rendered for the district. Specifically, the defendant testified that he appropriated certain moneys to himself as commission payments from the district, to which he was entitled under an agreement with Duffy, for his negotiation of a sponsorship agreement between a sportswear company and the district. The defendant testified that he appropriated other moneys to himself as compensation for "player profile" books he manufactured for district teams. The defendant testified that he appropriated yet other moneys to himself as reimbursement for legitimate district expenses concerning, for example, uniforms. The defendant testified that, for the most part, Duffy was aware of his activities in this regard and authorized them. The defendant also testified that Duffy authorized him to sign Duffy's name on checks drawn on district accounts and instructed the defendant to

conceal the true nature of certain of his withdrawals from district accounts.

As the defendant properly argues, if he acted under a claim of right, he did not act with a felonious intent. An accused, acting under even an unfounded or mistaken claim of right, lacks the intent to steal. See *State* v. *Varszegi*, supra, 33 Conn. App. 372–73. The defendant's testimony was, of course, subject to the court's careful scrutiny. The court disbelieved the testimony. We must defer to the credibility assessments made by the finder of fact, who had a vantage point far superior to ours from which to assess the testimony. *State* v. *Patterson*, 276 Conn. 452, 461, 886 A.2d 777 (2005).

The court found that Duffy had not coerced or instructed the defendant to appropriate the moneys to himself or to conceal the true nature of his withdrawals from district accounts. The court found that the defendant engaged in a secret pattern of behavior, appropriating the moneys to himself in such a manner as to conceal the true nature of his activities from others, including Duffy. The defendant signed Duffy's name on checks without his consent, routinely made false notations on checks, manufactured financial records that misrepresented district finances and did not disclose information to other association officials when he was asked to do so. As the court found, the true nature and extent of the defendant's activities came to light only after police recovered evidence from the defendant's home.

The court found that there was no credible evidence of an agreement, either written or oral, pursuant to which the defendant was entitled to commission payments. The court further found that there was no credible evidence that the defendant was entitled to the moneys at issue for any services rendered to the district, including the preparation of player profile books. The court also found that, during the time in which he

engaged in this behavior, the defendant was experiencing personal financial problems. All of these findings are supported by the evidence.

The court reasoned that the secretive and deceptive nature of the defendant's conduct made it less likely that the defendant acted under a claim of right.[3] Under the facts of this case, such an inference was sound. The findings that the defendant acted in a secretive and deceptive manner, that the defendant appropriated the moneys at issue without authorization to do so, that no credible evidence supported the defendant's claim that

---

[3] The court briefly drew an analogy between its inference that the defendant's pattern of secretive conduct tended to belie the defendant's claim that he acted in accordance with a claim of right and the requirement in adverse possession cases that subject premises be used by the adverse possessor in an open and notorious manner. See, e.g., *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 779–80, 890 A.2d 645 (2006). The defendant claims that the court's use of an analogy concerning the law of adverse possession reflects that the court applied "a completely irrelevant standard from property law" to this case. Our case law is replete with analogies. When the court drew an analogy on the basis of the law of adverse possession, it necessarily signaled that it was drawing a comparison, not applying the law of adverse possession. It would be unreasonable and illogical to interpret the court's analogy as an indication that it applied inapplicable law to this case. The court set forth the elements of the crime and properly focused its inquiry on the defendant's subjective state of mind, determining whether the defendant had acted in accordance with a good faith belief that he was entitled to the moneys at issue. See *State* v. *Varszegi*, supra, 33 Conn. App. 373. We conclude that the court's analysis was proper.

The defendant also claims that the court improperly required that conduct reflecting a good faith claim of right occur openly. The court implicitly reasoned that, had the defendant openly appropriated the moneys at issue to himself, in plain view of other association officials, such conduct would have strengthened his testimony that he acted in good faith under a claim of right. It is evident from the court's reasoning that the fact that the defendant had acted in a secretive manner was one of several facts from which the court drew the inference that the defendant had acted with an intent to steal. Given the facts of this case, we do not conclude that the inference drawn by the court, or the court's reliance on this inference, was unreasonable. See *State* v. *Reyes*, 19 Conn. App. 179, 191, 562 A.2d 27 (1989) ("trier may rely on its common sense, experience and knowledge of human nature in deciding among conflicting inferences that logically and reasonably flow from the same basic fact"), cert. denied, 213 Conn. 812, 568 A.2d 796 (1990).

he was entitled to the moneys at issue, that no credible evidence supported the defendant's claim that he acted with a good faith belief that he was entitled to the moneys at issue and that the defendant was experiencing financial problems at the time he appropriated the moneys at issue were significant. "[I]ntent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Simmons*, 86 Conn. App. 381, 387, 861 A.2d 537 (2004), cert. denied, 273 Conn. 923, 871 A.2d 1033, cert. denied, 546 U.S. 822, 126 S. Ct. 356, 163 L. Ed. 2d 64 (2005).

The reasonable inferences to be drawn from these findings and the other evidence amply supported the court's ultimate finding that the defendant appropriated the moneys wrongfully without a subjective belief that he honestly was entitled to do so. As such, the evidence supported the court's finding that the defendant acted with the felonious intent required for conviction.

The judgment is affirmed.

In this opinion the other judges concurred.