*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CF-0560

DELVIN T. NEAL, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2022-CF3-006466)

(Hon. Lynn Leibovitz, Trial Judge)

(Argued December 17, 2024                    Decided July 31, 2025)

*Cecily E. Baskir* for appellant.

*Kevin Birney*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney at the time of argument, and *Chrisellen R. Kolb*, *Elizabeth H. Danello*, *Kathleen E. Houck*, and *Stephanie Dinan*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and GLICKMAN, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellant Delvin T. Neal challenges his conviction for robbery. We affirm Mr. Neal's conviction.

## I. Factual and Procedural Background

The evidence at trial included the following. Mr. Neal worked as a barber in a barbershop located in the District of Columbia. Andrew Street was a long-standing client of Mr. Neal and visited the shop often. Mr. Street would go to the barbershop either alone or with his mother, Sillette Sheler, with whom Mr. Street lived. As one way to make money, Mr. Street sold watches that he received from contacts in the music industry.

On one occasion, Mr. Neal purchased a Hublot watch from Mr. Street for $1,000. The watch typically retails for at least $13,000. Ms. Sheler was present for the purchase.

Shortly after the sale of the first watch, Mr. Neal called Mr. Street asking about purchasing a second watch. Mr. Street and Ms. Sheler went to the barbershop to sell the watch and for Mr. Street to receive a haircut. Mr. Neal told Mr. Street to come out to Mr. Neal's car so that Mr. Neal could get Mr. Street money to purchase the second watch. The two then left the barbershop and headed to Mr. Neal's truck while Ms. Sheler remained in the barbershop.

Mr. Neal opened the door to his truck as if he was going to get money to buy the watch. Instead, Mr. Neal shut the door and pinned Mr. Street up against the

truck. Mr. Neal asked for his money back from the sale of the first watch, but Mr. Street replied that Mr. Neal would not be getting a refund. Mr. Neal then punched Mr. Street in the face repeatedly. Mr. Street ran, but Mr. Neal grabbed Mr. Street's shirt and hit Mr. Street once more.

At this point, two other men who were unknown to Mr. Street became involved in the altercation. Mr. Neal dragged Mr. Street toward a truck while one of the unknown men snatched Mr. Street's watch, earrings, and chain as the group was beating Mr. Street. Mr. Street was brought to the ground, and one of the unknown men took Mr. Street's iPad.

As the men were assaulting Mr. Street, Ms. Sheler came out of the barbershop and intervened. Ms. Sheler asked the men what they were doing, picked Mr. Street up off the ground, and walked with Mr. Street towards her car. Mr. Neal followed the pair to Ms. Sheler's car. As Ms. Sheler was trying to get Mr. Street into the front passenger seat of the car, Mr. Neal snatched Ms. Sheler's car keys from Ms. Sheler's hand, but Mr. Street snatched the keys back.

Ms. Sheler walked to the driver's side of the car. At the same time, Mr. Neal opened the rear driver's side door of the car and removed Ms. Sheler's wallet. Ms. Sheler tried to snatch the wallet back, but Mr. Neal lifted the wallet up and told Ms. Sheler that she could not have her wallet back until she gave Mr. Neal a thousand

dollars. Ms. Sheler shut the car door, and she and Mr. Street drove away without Ms. Sheler's wallet.

Ms. Sheler and Mr. Street went to the police station to file a report. Later that day, the police went to the barbershop and spoke with Mr. Neal. Mr. Neal recounted a version of the altercation to the police that was largely consistent with Mr. Neal's trial testimony as described below. Mr. Neal was holding Ms. Sheler's wallet when speaking with the police, and he told the police that he was about to go drop the wallet off at Ms. Sheler's address. Mr. Neal also had the watch that he had originally purchased from Mr. Street for $1,000.

Mr. Neal testified on his own behalf and gave the following account. Mr. Neal had cut Mr. Street's hair for several years. Mr. Neal had purchased various items from Mr. Street and his mother, Ms. Sheler, "collectively." Mr. Neal thought that Mr. Street and Ms. Sheler owned a consignment shop together.

Mr. Neal purchased a Hublot watch from Mr. Street for $1,000. In Mr. Neal's presence, Mr. Street demonstrated the authenticity of the watch using a phone app. The next day, Mr. Street assured Mr. Neal that the watch was authentic, and Mr. Neal reminded Mr. Street that they had agreed that if the watch was not real, Mr. Neal could get his money back. The same day, Mr. Neal noticed that the second hand on the watch was not working, so he took it to a repair shop. The individuals

at the repair shop told Mr. Neal that the second hand did not work because the watch was fake.

Mr. Neal called Mr. Street to tell Mr. Street that the watch was fake and to ask for a refund. During the call, Mr. Street was quite upset that Mr. Neal went to the repair store "to check behind him." Mr. Street hung up without responding about giving Mr. Neal his money back. Mr. Neal could hear Ms. Sheler in the background during the phone call, and she exclaimed that Mr. Neal "was wrong" and that she and Mr. Street "don't sell fake things." Following the phone call, Mr. Neal attempted to contact Mr. Street about returning the watch and getting a refund, but Mr. Street did not respond.

Sometime later, a barbershop client asked Mr. Neal about Mr. Neal's watch and expressed interest in purchasing a watch. Mr. Neal texted Mr. Street asking if he had another watch. Mr. Street and Ms. Sheler came to the barbershop and talked with the client about a watch and a chain. Mr. Street handed the client a watch from his wrist. The client told Mr. Street that the watch was fake, declined to purchase the watch, and handed the watch back to Mr. Street. Mr. Neal then told Mr. Street that Mr. Neal wanted to return the Hublot watch and that Mr. Street should follow Mr. Neal out to Mr. Neal's truck so that Mr. Neal could hand Mr. Street the watch.

Mr. Neal and Mr. Street walked outside to Mr. Neal's truck, and Mr. Neal retrieved the watch to return it to Mr. Street. When presented with the watch, Mr. Street asked, "[W]hat's this," and knocked the watch from Mr. Neal's hand. As Mr. Neal bent down to retrieve the watch, Mr. Street told Mr. Neal that he would kill Mr. Neal for "messing with his money." Mr. Street then lunged at Mr. Neal with a shiny item in his right hand, which caused Mr. Neal to fear for his life. Mr. Neal "put [his] arm up to create distance, . . . swung one punch to . . . the jaw, ear area," and pushed Mr. Street back in order to get out from between the door and the truck.

Mr. Neal saw two men approach. Mr. Neal thought that they were coming to aid Mr. Street, but instead the two men assaulted Mr. Street. Mr. Neal picked Mr. Street up off the ground and tried to bring him into the barbershop as the two men continued hitting him. Mr. Neal did not make it to the barbershop because another man "cut off" the path and "swung a punch." Mr. Street started to fall over, which caused Mr. Neal to fall over and let go of Mr. Street. The men, who were unknown to Mr. Neal, repeatedly beat Mr. Street as Mr. Neal watched.

Ms. Sheler ran outside from the barbershop, and Mr. Neal tried to help her get to her car so that she did not get assaulted. During the confusion, Ms. Sheler dropped her wallet on the ground, so Mr. Neal picked it up. Mr. Neal did not immediately return the wallet, nor did he say anything about the wallet as Ms. Sheler was trying

to get Mr. Street into her car. When Ms. Sheler got into her car, Mr. Neal told her that he would "give her wallet back" if she gave him his $1,000 back. At the end of the altercation, Mr. Neal returned to the barbershop with Ms. Sheler's wallet.

Mr. Neal was charged with two counts of robbery—one count for the taking of Mr. Street's watch, earrings, and chain and one count for the taking of Ms. Sheler's wallet—and one count of assault with significant bodily injury. A jury found Mr. Neal guilty of the robbery of Ms. Sheler's wallet and not guilty of the robbery and assault of Mr. Street.

## II. Jury Instruction on Intent to Steal

Mr. Neal argues for the first time on appeal that the trial court failed to instruct the jury adequately on the element of robbery requiring proof that the defendant acted with the intent to steal. We hold that Mr. Neal has failed to establish that reversal is warranted.

### A. Procedural Background

The trial court instructed the jury that to find Mr. Neal guilty of robbery, the jury had to find beyond a reasonable doubt that Mr. Neal "took the property without [a] right to it, and intending to steal it." The court further elaborated that "[i]t is necessary that the defendant intended to deprive the complainant of his or her

property, and to take it for his own use." Mr. Neal did not object at trial to these instructions.

## B. Analysis

For "unpreserved claims of instructional error," "[w]e apply plain-error review." *Alleyne v. United States*, 327 A.3d 472, 483 (D.C. 2024). To succeed on plain-error review,

> [a]n appellant must show that (1) the trial court erred; (2) the error was obvious or readily apparent, and clear under current law; (3) the error affected [the appellant's] substantial rights; and (4) either a miscarriage of justice, that is, actual innocence; or that the trial court's error seriously affected the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 484 (brackets and internal quotation marks omitted). We see no plain error warranting reversal.

This court recently held that an intent to steal can be proven by evidence that the defendant either (1) intended to permanently deprive the rightful owner of the property at issue or (2) was willing to return the property only upon satisfaction of a condition that the defendant had no right to impose. *Alleyne*, 327 A.3d at 481. The jury instruction in *Alleyne* describing the requirement of proof of intent to steal did not specifically communicate those alternatives. *Id.* at 485. We nevertheless declined to reverse in *Alleyne*, concluding that the defendant had failed to show that

any error affected the defendant's substantial rights, *i.e.*, that there was a reasonable probability of a different outcome but for the alleged error. *Id.* at 485-86.

We relied in part on the idea that the theft instructions given to the jury would likely have led the jury to understand that the intended deprivation for purposes of robbery would have to be more than temporary. *Alleyne*, 327 A.3d at 487.

We also, however, placed substantial weight on the nature of the evidence, *id.* at 488, which was as follows. The defendant caused a collision between his car and the complainant's car. *Alleyne*, 327 A.3d at 476. The defendant then got out of his car, reached into the complainant's car, searched the complainant, and took the complainant's wallet from the complainant's pants. *Id.* at 476-77. The complainant repeatedly asked for his wallet back, but the defendant refused, demanding that the complainant "pay for this." *Id.* at 477 (internal quotation marks omitted). The defendant indicated a willingness to return the wallet if the complainant followed him somewhere, but the complainant feared for his safety and ultimately declined to do so. *Id.* The defendant left with the complainant's wallet. *Id.* In holding that the absence of a more specific explanation of intent to steal did not affect the defendant's substantial rights, we explained that the evidence "strongly suggests that [the defendant] possessed the intent to hold [the complainant's wallet] for ransom." *Alleyne*, 327 A.3d at 488.

Finally, we explained that the closing arguments had focused on a theory of permanent or conditional deprivation, specifically on the theory that the defendant had taken the complainant's wallet to try to extract payment. *Alleyne*, 327 A.3d at 488.

We find no effect on substantial rights in this case for the second and third reasons we relied upon in *Alleyne*. Mr. Neal admitted in his testimony that he told Ms. Sheler that he would give her the wallet back if she paid him $1,000. The prosecutor argued in closing that intent to steal was established by Mr. Neal's making of that demand. We know from *Alleyne* that taking property with the intent to return the property only upon fulfillment of a condition that defendant has no right to impose establishes intent to steal. 327 A.3d at 481. Finally, it does not appear that Mr. Neal is contending that he actually had the legal right to seize and retain Ms. Sheler's wallet to try to coerce her into paying him $1,000.

On the last point, Mr. Neal does cite a few out-of-jurisdiction cases in support of the argument that seizing a person's unrelated property to compel payment of a debt does not constitute robbery. *E.g.*, *State v. Sawyer*, 110 A. 461, 462-63 (Conn. 1920). We will discuss that issue more fully later in this opinion. For current purposes, it suffices to note that the cases cited by Mr. Neal do not support the idea that it is actually lawful to use self-help to seize a person's unrelated property to

compel payment of a debt. *See, e.g.*, *Sawyer*, 110 A. at 463 (one who takes another's property to compel payment of debt is "doubtless . . . a trespasser") (internal quotation marks omitted).

We are aware of no authority suggesting that a person who is owed a debt can lawfully use self-help to seize unrelated property of the debtor to compel payment of the debt. Our decision in *Alleyne* clearly points in the opposite direction because we took as a given in *Alleyne* that the defendant in that case had no right to take the complainant's wallet to coerce the complainant to pay for the damage caused by the collision. 327 A.3d at 482-83. More generally, we think it clear that a rule permitting such conduct would be unwarranted. Under such a rule, for example, a merchant who is owed a debt by a customer could apparently seize the customer's dog and demand payment of the debt as ransom. Even in the context of trying to recover a specific piece of stolen property from the thief, it is well settled that force may not be used to recapture the piece of property except immediately after the taking of the property. *See, e.g.*, Wayne L. LaFave, *Substantive Criminal Law* § 10.6(d), at 237 (3d ed. 2018) (if interval has elapsed since taking, "[t]he common law rule is that the use of force in recaption is then not justified"); Model Penal Code § 3.06 note c, at 84-85 (Am. L. Inst. 1985) (same; "To allow recaption in these circumstances would create a grave risk of a breach of the peace . . . .").

For the foregoing reasons, we hold that Mr. Neal had no right to seize Ms. Sheler's wallet and refuse to return it unless she paid him $1,000. We further hold that Mr. Neal has failed to show a reasonable probability that he would have been acquitted if the jury had been specifically informed that intent to steal can be proven by evidence that the defendant either (1) intended to permanently deprive the rightful owner of the property at issue or (2) was willing to return the property only upon satisfaction of a condition that the defendant had no right to impose. *Alleyne*, 327 A.3d at 481.

### III. Claim-of-Right Defense

Mr. Neal argues that the jury should have been instructed that he had a "claim of right" defense to robbery, which would be applicable if he subjectively believed that he could lawfully take Ms. Sheler's wallet to try to coerce her into paying him $1,000. We hold that a claim-of-right instruction was not warranted in this case.

### A. Background and Standard of Review

Mr. Neal asked the trial court to instruct the jury on a claim-of-right defense with respect to the robberies of Mr. Street and Ms. Sheler. The trial court agreed to give a claim-of-right instruction with respect to the taking of Mr. Street's watch because the watch Mr. Neal bought was "quite comparable" to the watch that was

taken from Mr. Street and a jury could find that Mr. Neal "honestly and completely and reasonably believed that he was owed a real Hublot watch." The trial court, however, declined to give a claim-of-right instruction with respect to the taking of Mr. Street's chain and earrings because those items were "over and above the value of the watch." The trial court also declined to give a claim-of-right instruction relating to the taking of Ms. Sheler's wallet because the wallet was not "the property originally taken or for which [Mr. Neal] is owed money, and is in no respect the money he is owed." Further, the trial court explained that "[t]here is no basis in this record for [Mr. Neal] to reasonably and honestly conclude that [Ms. Sheler] was the one that sold him the watch" or "that she owed him money or property."

The parties disagree about the standard of review this court should apply when reviewing a trial court's refusal to give a requested instruction. We need not resolve that disagreement. Rather, we assume without deciding that Mr. Neal is correct that our review is de novo. We agree with the trial court's refusal to instruct the jury on a claim-of-right defense with respect to Mr. Neal's taking of Ms. Sheler's wallet.

**B. Analysis**

The claim-of-right defense to robbery was first recognized in this jurisdiction in *Richardson v. United States*, 403 F.2d 574, 575-76 (D.C. Cir. 1968). *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) (D.C. Circuit opinions issued prior to

February 1, 1971, are binding on this court). In *Richardson*, the defendant was charged with robbery for forcibly taking either $98 or $138 from the complaining witness's wallet after the defendant had unsuccessfully tried to collect a $270 gambling debt from the complainant on multiple occasions. 403 F.2d at 575. The court held that the jury should have been instructed that if the defendant acted "in the good faith belief that he has a right to take the property," that would negate the "specific intent" element of robbery. *Id.*

We note an ambiguity in *Richardson*. At times the court in *Richardson* frames the issue as whether the defendant had a good-faith belief that the defendant was entitled to the property at issue. *Id.* at 575-76. At other times, though, the court frames the issue as whether the defendant had a good-faith belief that the defendant had a right to *take* the property at issue. *Id.* at 575. Those two formulations are potentially different. A person might be entitled to take a dangerous weapon from a child without being entitled to the weapon. Conversely, as discussed earlier, a person might be entitled to an item of personal property, for example an item that had been stolen some time ago, without being entitled to use self-help to take possession of the item from someone else.

As far as we have been able to determine, *Richardson* is the only case in this jurisdiction to have held that a claim-of-right defense to robbery was available in the

circumstances of a given case. In addition to the ambiguity noted above, *Richardson* itself arguably suggests a possible limit on the defense. *Richardson* speaks of a good-faith belief that the defendant is entitled to (or entitled to take) "the property" or "the money." 403 F.2d at 575, 576. That wording potentially raises the question whether the claim-of-right defense extends to settings where the defendant takes something other than money or a specific item that the defendant believes rightfully belongs to the defendant. *See also id.* at 576 n.2 (discussing "taking of money under color of a liquidated debt").

Our later cases discussing the claim-of-right defense have suggested this and other possible limits on the defense. *See, e.g.*, *Wilson v. United States*, 266 A.3d 228, 238 (D.C. 2022) (defense available if defendant has good-faith belief that defendant is "legally entitled to the property" taken; arguably suggesting that defense would be inapplicable where additional property taken); *Simmons v. United States*, 554 A.2d 1167, 1169 n.5 (D.C. 1989) (questioning whether defense applies where defendant was seeking to recover illegal debt); *Townsend v. United States*, 549 A.2d 724, 727 n.6 (D.C. 1988) (holding that defense is not applicable if amount or nature of what is taken exceeds amount owed; citing cases).

The parties dispute whether these suggested limits amount to holdings and whether some of them are applicable to preclude the defense in the circumstances of

this case. We need not address all of those disputes. Rather, for reasons we will explain, we hold that (1) there was insufficient evidence to support a theory that Mr. Neal subjectively believed that he was entitled to Ms. Sheler's wallet, *i.e.*, that Ms. Sheler's wallet was actually his property; and (2) it is not a defense to robbery that the defendant subjectively but incorrectly believed that the defendant had a right to forcibly take property that was not the defendant's from the complainant.

On the first point, we assume without deciding that Mr. Neal would have been entitled to an instruction about the claim-of-right defense if there had been sufficient factual support for the idea that he had a good-faith belief that he was entitled to Ms. Sheler's wallet, in the sense that he believed that Ms. Sheler's wallet was his property. We hold that there was not a sufficient factual basis in this case to support that idea.

The parties dispute the standard applicable to determining whether an instruction requested by the defense must be given. Mr. Neal argues that an instruction requested by the defense must be given if supported by any evidence, no matter how weak. As the United States points out, however, we have explained that "it is not correct that any evidence, however weak, entitles the defendant to an instruction." *Akinbi v. United States*, 321 A.3d 634, 641 (D.C. 2024) (brackets and internal quotation marks omitted). Rather, the standard is whether "there exists

evidence sufficient for a reasonable jury to find in [the defendant's] favor" with respect to the issue. *Holloway v. United States*, 25 A.3d 898, 902 n.6 (D.C. 2011) (internal quotation marks omitted). Applying that standard, we hold that there was insufficient factual support in this case to support the theory that Mr. Neal had a good-faith belief that Ms. Sheler's wallet belonged to him.

Mr. Neal testified, and he said nothing at all about having a subjective belief that he was legally entitled to Ms. Sheler's wallet. To the contrary, Mr. Neal admitted at trial to having told Ms. Sheler that he would "give *her* wallet back" if she gave him his $1,000 (emphasis added). Moreover, Mr. Neal told the police that he had Ms. Sheler's wallet and was about to go drop the wallet off at Ms. Sheler's address. In sum, the evidence refuted rather than supported any claim that Mr. Neal had a good-faith belief that Ms. Sheler's wallet belonged to him.

That leaves the issue raised by the alternative formulation of the claim-of-right defense in *Richardson*: whether Mr. Neal had a good-faith belief that he was entitled to *take* Ms. Sheler's wallet even if he knew that her wallet was not his property. We are doubtful that there was a sufficient factual basis for that theory either. There was evidence tending to explain *why* Mr. Neal took Ms. Sheler's wallet: Mr. Neal believed that Mr. Street had sold Mr. Neal a fake watch, he believed that Ms. Sheler and Mr. Street were in business together, and he wanted to get his money back. But

Mr. Neal never claimed, either to the police or in his testimony at trial, that he thought he was acting lawfully by taking Ms. Sheler's wallet and refusing to give it back unless she paid him $1,000. As we have explained, such conduct was in fact not lawful, and we see no specific evidence indicating that Mr. Neal believed in good faith that he was legally entitled to engage in that conduct.

We do not rest our decision, however, on the arguable lack of factual support for the idea that Mr. Neal had a good-faith belief that he was entitled to take Ms. Sheler's wallet even if he knew that her wallet was not his property. Rather, we hold as a matter of law that the claim-of-right defense to robbery does not extend to circumstances in which a defendant tries to compel payment of a debt by forcibly seizing the complainant's unrelated property. We reach that conclusion for conceptual, doctrinal, and practical reasons.

Conceptually, a good-faith but incorrect belief that taken property belongs to the defendant can be understood to negate the intent-to-steal element of robbery, because it is difficult to see how a defendant is acting with an intent to steal when the defendant in good faith believes that the property at issue belongs to the defendant. The same is not true when the defendant instead incorrectly believes that the defendant has the legal right to take property that does not belong to the defendant in order to coerce payment of an unrelated debt. *Alleyne* establishes that

such conduct amounts to intent to steal, and a defendant's subjective belief that the law is otherwise does not negate the fact that intent to steal has been established. Rather, such a belief is more akin to the kinds of mistakes of law that ordinarily do not constitute a defense to criminal charges. *See generally, e.g.*, *Beachum v. United States*, 197 A.3d 508, 511 (D.C. 2018) (per curiam) (Barring unusual circumstances, "[i]gnorance of the law generally does not excuse a person from criminal liability . . . .") (internal quotation marks omitted).

Doctrinally, our cases already foreclose the broad theory that a claim-of-right defense to robbery exists anytime the defendant subjectively believes that it was lawful to take the complainant's property. Under that broad view, a defendant who was owed a small debt and seized the complainant's car to compel satisfaction of the debt would have a defense to robbery if the defendant in good faith thought such conduct was lawful. We have held to the contrary. *See, e.g.*, *Townsend*, 549 A.2d at 727 n.6 (claim-of-right defense is not applicable if amount or nature of what is taken exceeds amount owed; citing cases).

Practically, the theory that a claim-of-right defense to robbery exists anytime the defendant subjectively believes that it was lawful to take the complainant's property would have surprising and undesirable consequences. To take an extreme and somewhat fanciful example, under such a view, a defendant who used force to

take property from a complainant would have a defense to robbery if the defendant subjectively believed that all laws purporting to establish property rights were unconstitutional. Less implausibly, a defendant who used force to take property from a complainant who was an employee of a debtor or a child of a debtor would have a defense to robbery if the defendant subjectively believed it is lawful to take property from the employees or children of a debtor in order to coerce satisfaction of a debt. Moreover, as previously noted, a defendant who used force to take a car from a complainant to coerce satisfaction of a $5 debt would have a defense to robbery if the defendant subjectively believed that such conduct was lawful.

In light of the foregoing, it should not be surprising that the substantial weight of authority holds that it is not a defense to robbery that the defendant took property from the complainant to coerce payment of, or to collect upon, an unrelated debt. *See, e.g.*, *Heard v. State*, 354 S.W.3d 49, 54 (Ark. 2009) (majority rule is that claim-of-right defense to robbery does not extend to "collection of a debt"; citing cases); *People v. Tufunga*, 987 P.2d 168, 177 (Cal. 1999) (same; citing cases); *State v. Ortiz*, 305 A.2d 800, 801-02 (N.J. Super. Ct. App. Div Ct. 1973) (per curiam) (same; citing cases; view that it is defense to robbery that defendant was taking money to satisfy debt is "little more than a relic of days long past," never enjoyed broad acceptance, has been rejected by substantial weight of modern authority, and "not only is lacking in sound reason and logic, but it is utterly incompatible with and

has no place in an ordered and orderly society such as ours, which eschews self-help through violence").

We acknowledge and adhere to *Richardson*'s narrow holding: it is a defense to robbery in this jurisdiction if the defendant believes in good faith that the defendant is entitled to the property the defendant takes. 403 F.2d at 575-76. Moreover, *Richardson* applied that principle to the taking of cash from a person who allegedly owed the defendant money. *Id.* "Money being fungible," *Robers v. United States*, 572 U.S. 639, 643 (2014), the court in *Richardson* in effect treated the defendant's belief that he was owed a money debt as a belief that he was entitled to cash in that amount held by the debtor. It would be a substantial extension of *Richardson*, however, to hold that it is a defense to robbery that the defendant subjectively but erroneously believed that the defendant was entitled to seize unrelated tangible property from the complainant to coerce the complainant to satisfy a debt. For the reasons we have stated, we decline to extend *Richardson* in that manner.

In sum, we hold that trial court correctly declined to instruct the jury in this case on the theory that Mr. Neal had a claim-of-right defense to the charge of robbing Ms. Sheler.

### IV. Sufficiency of Evidence of Intent to Steal

Mr. Neal argues that there was insufficient evidence of intent to steal. We hold to the contrary.

We review claims of insufficiency of the evidence "in the light most favorable to sustaining the conviction, giving deference to the factfinder's ability to weigh the evidence and make credibility and factual determinations." *Peery v. United States*, 849 A.2d 999, 1001 (D.C. 2004) (citation omitted). "An appellant making a claim of evidentiary insufficiency bears the heavy burden of showing that the prosecution offered no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *Dorsey v. United States*, 154 A.3d 106, 112 (D.C. 2017) (internal quotation marks omitted).

Essentially for reasons that we have already explained, Mr. Neal's sufficiency challenge is foreclosed by our decision in *Alleyne*. *Alleyne* holds that intent to steal is established if the defendant takes property with the intent to return the property only upon satisfaction of a condition that the defendant has no right to insist upon. 327 A.3d at 481. Mr. Neal concededly took Ms. Sheler's wallet and refused to return it unless she paid him $1,000. We have held that Mr. Neal had no right to insist on that condition. It follows that there was sufficient evidence of intent to steal in this case.

For the foregoing reasons, we affirm Mr. Neal's conviction for robbery.

*So ordered.*