******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KAYLA M. *v.* EDWARD GREENE
(AC 37785)

KAYLA M. *v.* SUSAN GREENE
(AC 37786)

Beach, Keller and Prescott, Js.

*Argued December 10, 2015—officially released February 18, 2016\**

(Appeal from Superior Court, judicial district of
Litchfield, Danaher, J.)

*William J. Ward*, for the appellants (defendant in
each case).

*Kayla M.*, self-represented, the appellee (plaintiff in
each case).

*Opinion*

PRESCOTT, J. In these appeals, we are called upon for the first time to interpret General Statutes § 46b-16a, which protects victims of stalking through civil protection orders.[1] Section 46b-16a (a) provides in relevant part: "Any person who has been the victim of . . . stalking, as described in sections 53a-181c, 53a-181d and 53a-181e, may make an application to the Superior Court for relief under this section . . . ."

The defendants, Edward Greene (husband) and Susan Greene (wife), appeal from the judgments of the trial court granting the applications of the plaintiff, Kayla M.,[2] for orders of civil protection pursuant to § 46b-16a. The defendants claim that the court improperly granted the plaintiff's applications for the orders because: (1) the court improperly interpreted § 46b-16a (a) to require that there be reasonable grounds to believe that the defendants' conduct constitutes the crime of stalking under one, but not all three, of the criminal stalking statutes, and (2) there was insufficient evidence for the court to determine that there were reasonable grounds to believe that they had stalked the plaintiff and would continue to do so in the absence of an order of civil protection. We affirm the judgments of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our analysis. On March 9, 2015, the plaintiff filed two applications for orders of civil protection, one for each defendant, who were regular customers at the restaurant at which she was employed. In the applications and the attached affidavits, the plaintiff alleged that the defendants stalked her and that she felt threatened by them.[3] The court issued two ex parte civil protection orders, which prohibited the defendants from contact with the plaintiff, including indirect contact through a third party, and coming within 100 yards of the plaintiff. The ex parte orders were to expire on March 19, 2015, the day on which the hearing on the applications for protection orders was held.

At the hearing, the court heard testimony from the plaintiff and the defendants. The court credited the plaintiff's testimony, as well as her statements in her affidavit attached to the applications.[4] On the basis of this testimony, the court found the following facts, which the defendants do not challenge:[5] "[The defendants] first came to know the [plaintiff] approximately two to two and one-half years ago, when they patronized the restaurant where the [plaintiff] was employed as a member of the waitstaff. . . .

"The [plaintiff] is a single mother of two young daughters, and the [defendants] took an interest in the [plaintiff's] well being, on at least one occasion helping her wrap Christmas presents for her daughters. Eventually,

the [husband] began communicating with the [plaintiff] through social media. The [defendants] began 'messaging' the [plaintiff] frequently. The [plaintiff] testified that in view of her status as a waitress, and the [defendants'] status as customers at the [plaintiff's] place of employment, the [plaintiff] tried to be polite to the [defendants] without engaging with them any more than she believed she had to.

"In July, 2014, the [husband's] communications with the [plaintiff] grew increasingly inappropriate, beginning with an electronic message comment he posted about a Facebook picture of the [plaintiff], in which she was wearing a bathing suit. The [plaintiff] testified, and the court credits her testimony, that the [husband] asked the [plaintiff] to provide him with nude photographs of her. The [plaintiff] refused to do so. The [husband], when questioned about this issue, testified that he 'may' have requested nude photographs of the [plaintiff] 'as a joke.' The court does not credit the claim that the request for nude photographs was intended as 'a joke.' " The court further found: "The [wife], when questioned about this issue, testified that she became aware of her husband's request for the nude photographs of the [plaintiff], but she expressed indifference to that conduct.

"The [husband] continued to send messages to the [plaintiff], which she ignored, hoping he would thereby understand that she did not wish to communicate with him. She followed that course of action because she was fully cognizant of the fact that [the defendants were] customers at her place of employment.

"[The husband] did not cease his interest in the [plaintiff]. He came to her place of employment and inquired of other staff members as to the [plaintiff's] home address, he asked her why her marriage had failed, and whether her children had the same biological father. The [plaintiff], at or about that point, blocked the [defendants] on Facebook. [The husband] persisted in reaching out to the [plaintiff], using e-mail, and asking, in a January 1, 2015 e-mail, why the applicant had taken the latter action. The [husband] indicated, in that e-mail, that both [the husband and the wife] were puzzled and hurt because the [plaintiff] had blocked them on Facebook. The [defendants] thereafter came to the restaurant [where the plaintiff worked] and left a letter expressing their upset at the [plaintiff's] effort to cease communications with them, and leaving money in an envelope for the [plaintiff]. On February 22, 2015, [the husband] sent an e-mail to the [plaintiff] stating that [the defendants] were at the restaurant . . . . The applicant ignored the latter message."

"On March 7, 2015, the [defendants] again came to the restaurant. [The defendants] walked up behind the [plaintiff], [and] the [husband] grabbed the [plaintiff's] arm 'very hard,' and then continued on to the restaurant

bar, where the [defendants] had drinks for about one hour. . . . The [husband] then walked away from the bar and confronted the [plaintiff] in a confined space, telling the [plaintiff] that she 'will speak to [him] one day.' A co-worker . . . witnessed the encounter and described [it] as 'very threatening and uncomfortable to watch.' . . . The [plaintiff] sought the assistance of the manager of the restaurant." As the plaintiff walked past the defendants with the manager, the wife put her arm out and asked the plaintiff to talk to her and the husband, to which the plaintiff responded no. "The [defendants] left the restaurant, and thereafter the [husband] sent the following message to the [plaintiff]: 'You're walking on very thin ice, my dear. . . .' "

The court also found that the wife had "no recognition of the wrongfulness of her conduct or her husband's conduct, and that she intends to continue to frequent the [plaintiff's] place of employment, absent an order of protection barring her from doing so." Furthermore, the court did not credit the husband's testimony that he had no intention to communicate or interact with the plaintiff again; rather, the court found that he was "unnaturally obsessed with the [plaintiff] and that he has no recognition of the wrongfulness of his conduct."

The court concluded that there were reasonable grounds to believe that the defendants had engaged in conduct that constituted the crime of stalking in the second and third degrees and that they would continue to engage in such conduct in the absence of civil protection orders. The court granted the plaintiff's applications for orders of civil protection against both defendants. The orders expire on March 19, 2016. This appeal followed. Additional facts with be set forth as necessary.

I

The defendants first claim that the court improperly interpreted § 46b-16a (a). According to the defendants, in order to obtain an order of civil protection on the basis of stalking, § 46b-16a (a) requires that the applicant prove that there are reasonable grounds to believe that their conduct constituted stalking in the first, second, *and* third degrees as set forth in General Statutes §§ 53a-181c, 53a-181d, *and* 53a-181e. Specifically, the defendants argue that the term "and" in § 46b-16a (a) is conjunctive and, thus, the elements of all three statutes must be met in order for the court to issue a civil protection order. We are not persuaded.

The defendants' claim raises a question of statutory interpretation. "[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the mean-

ing of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . General Statutes § 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to determine its meaning. If, after such consideration, the meaning is plain and unambiguous and does not yield absurd or unworkable results, we shall not consider extratextual evidence of the meaning of the statute. . . . Only if we determine that the statute is not plain and unambiguous or yields absurd or unworkable results may we consider extratextual evidence of its meaning such as the legislative history and circumstances surrounding its enactment . . . the legislative policy it was designed to implement . . . its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . We presume that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 614–15, 72 A.3d 394 (2013).

Section 46b-16a, which governs this case, provides in relevant part: "(a) Any person who has been the victim of sexual abuse, sexual assault or *stalking, as described in sections 53a-181c, 53a-181d and 53a-181e*, may make an application to the Superior Court for relief under this section, provided such person has not obtained any other court order of protection arising out of such abuse, assault or stalking and does not qualify to seek relief under section 46b-15.

"(b) The application shall be accompanied by an affidavit made by the applicant under oath that includes a statement of the specific facts that form the basis for relief. Upon receipt of the application, if the allegations set forth in the affidavit meet the requirements of subsection (a) of this section, the court shall schedule a hearing not later than fourteen days from the date of the application. . . . If the court finds that there are *reasonable grounds to believe that the respondent has committed acts constituting grounds for issuance of an order under this section and will continue to commit such acts* or acts designed to intimidate or retaliate against the applicant, the court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant. . . ." (Emphasis added.)

We conclude that a literal construction of "and" in § 46b-16a (a) in the conjunctive would lead to absurd or bizarre results. See, e.g., *State* v. *Hall*, 82 Conn. App. 435, 442–43, 844 A.2d 939 (2004). Indeed, our Supreme

Court has emphasized that "[a]lthough we frequently adhere to the literal language of a statute, we are not bound to do so when it leads to unconscionable, anomalous or bizarre results. See, e.g., *Clark* v. *Commissioner of Correction*, 281 Conn. 380, 400–401, 917 A.2d 1 (2007) (rejecting literal construction of statutory language because that construction would be inconsistent with legislative scheme governing same subject matter); *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 404–405, 780 A.2d 903 (2001) (rejecting literal construction of statute when that construction would result in inequitable and unintended consequences); *Levey Miller Maretz* v. *595 Corporate Circle*, 258 Conn. 121, 133, 780 A.2d 43 (2001) (declining to apply statutory language literally when to do so would lead to bizarre results); *State* v. *Brown*, 242 Conn. 389, 402, 699 A.2d 943 (1997) (declining to apply literal language of statute and rules of practice when that language could not be 'applied sensibly in that fashion')." *State* v. *Salamon*, 287 Conn. 509, 524–25, 949 A.2d 1092 (2008); see also *Pictometry International Corp.* v. *Freedom of Information Commission*, 307 Conn. 648, 687–88, 59 A.3d 172 (2013). In the context of § 46b-16a (a), the term "and" is susceptible to only one reasonable interpretation, i.e., that "and" is used in the disjunctive.

Our Supreme Court has held that the term "and" may be construed to mean "or," especially if construing "and" in the conjunctive would lead to an illogical or unreasonable result. See *Commission of Hospitals & Health Care* v. *Lakoff*, 214 Conn. 321, 329–30, 572 A.2d 316 (1990) ("[A]nd may be construed to mean or. . . . Only the construction of and as disjunctive makes the inclusion of [four other provisions] logically consistent . . . . In construing a statute, we will assume the legislature intended to accomplish a reasonable and rational result." [Citation omitted; internal quotation marks omitted.]); see also *Bania* v. *New Hartford*, 138 Conn. 172, 176–78, 83 A.2d 165 (1951).

If we were to construe the legislature's use of the word "and" in the conjunctive, as the defendants argue, the inclusion of § 53a-181d in the statutory language would be rendered meaningless. See *Marchesi* v. *Board of Selectmen*, supra, 309 Conn. 615 ("We presume that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." [Internal quotation marks omitted.]) If an applicant for a civil protection order on the basis of stalking always had to prove that there were reasonable grounds to believe that the defendant had committed stalking in the first, second, *and* third degrees, this means all applicants would be required to show that they were the victim of stalking in the first degree pursuant to § 53a-181c. The elements necessary to prove stalking in the first degree by definition include the elements of stalking in the second

degree. Section 53a-181c provides in relevant part: "(a) A person is guilty of stalking in the first degree when such person commits stalking in the second degree as provided in section 53a-181d and (1) such person has previously been convicted of a violation of section 53a-181d, or (2) such conduct violates a court order in effect at the time of the offense, or (3) the other person is under sixteen years of age. . . ."

In other words, a defendant can only be convicted of stalking in the first degree if he or she committed stalking in the second degree. Thus, if the term "and" in § 46b-16a (a) is conjunctive, then the phrase "as described in sections 53a-181c, 53a-181d and 53a-181e" is synonymous with "as described in §§ 53a-181c and 53a-181e." Such an interpretation of the term "and" would render the inclusion of § 53a-181d superfluous. Only the construction of "and" in the disjunctive makes the inclusion of all three stalking statutes logically consistent. Therefore, we conclude that the only reasonable interpretation of the term "and" in § 46b-16a (a) is in the disjunctive. Accordingly, an applicant for a civil protection order on the basis of stalking is required to prove only that there are reasonable grounds to believe that a defendant stalked and will continue to stalk, as described in §§ 53a-181c, 53a-181d *or* 53a-181e.

## II

Having determined that the term "and" in § 46b-16a (a) must be read in the disjunctive, we turn next to the defendants' claims that there was insufficient evidence in the record to establish that there were reasonable grounds to believe that the defendants stalked the plaintiff and would continue to do so, as required by § 46b-16a (b), to support the civil protection orders issued by the court. The defendants do not contest the court's factual findings or its authority to credit the plaintiff's testimony. They nonetheless maintain that this evidence is not sufficient to establish any of the elements of stalking under §§ 53a-181c, 53a-181d or 53a-181e. We disagree.

We apply the same standard of review to civil protection orders under § 46b-16a as we apply to civil restraining orders under General Statutes § 46b-15. Thus, we will not disturb a trial court's orders "unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion . . . we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mis-

take has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Citation omitted; internal quotation marks omitted.) *Princess Q. H.* v. *Robert H.*, 150 Conn. App. 105, 111–12, 89 A.3d 896 (2014).

The court found that there were reasonable grounds to believe that the defendants stalked and would continue to stalk the plaintiff in the second degree,[6] as described by § 53a-181d (b) (1).[7] Stalking in the second degree under § 53a-181d (b) (1) includes the following elements: (1) that the respondent acted knowingly, (2) that the respondent engaged in a course of conduct directed at the victim, and (3) that such conduct would cause a reasonable person to fear for his or her physical safety or for the physical safety of a third person.

"A person acts 'knowingly' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists . . . ." General Statutes § 53a-3 (12). "[K]nowingly ordinarily means with awareness . . . and . . . knows means to have cognizance, consciousness, or awareness. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proved by circumstantial evidence . . . and, is, except in rare cases, a question of fact. . . . Intention is a mental process which, of necessity, must be proven either by the statements or the actions of the person whose conduct is being examined. . . . [I]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Torres*, 111 Conn. App. 575, 581–82, 960 A.2d 573 (2008), cert. denied, 290 Conn. 907, 964 A.2d 543 (2009).

A "course of conduct" is defined as "two or more acts, including, but not limited to, acts in which a person directly, indirectly or through a third party, by any action, method, device or means, (1) follows, lies in wait for, monitors, observes, surveils, threatens, harasses, communicates with or sends unwanted gifts to, a person, or (2) interferes with a person's property." General Statutes § 53a-181d (a).

Fear is objectively reasonable if "a reasonable person under the existing circumstances would fear for his or her physical safety." *State* v. *Russell*, 101 Conn. App. 298, 319, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007). "To establish a stalking violation, [p]roof of verbal threats or harassing gestures is not essential . . . ." (Internal quotation marks omitted.) Id., 320. "[D]efendants' obsessive behaviors, even in the absence of threats of physical violence, [may] reason-

ably [cause] their victims to fear for their physical safety." Id., 321.

Unlike a criminal prosecution for stalking in the second degree in violation of § 53a-181d (b) (1), in which the state must prove all the elements beyond a reasonable doubt, an applicant for a civil protection order on the basis of stalking pursuant to § 46b-16a must prove only that there are "reasonable grounds to believe" that every element is met and that such conduct will continue. See General Statutes § 46b-16a (b). In determining whether there are reasonable grounds to believe that stalking occurred, it is instructive that, in the criminal context, "[t]he phrase 'reasonable grounds to believe' is synonymous with probable cause." *State* v. *Velasco*, 248 Conn. 183, 189, 728 A.2d 493 (1999). "While probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . In dealing with probable cause . . . as the very name implies, we deal with probabilities." (Citations omitted; internal quotation mark omitted.) *State* v. *Trine*, 236 Conn. 216, 237, 673 A.2d 1098 (1996).

A

We first address the husband's argument that there was insufficient evidence to support the court's determination that there were reasonable grounds to believe that he committed acts that constituted stalking as defined by § 53a-181d (b) (1). Specifically, he contends that he did not "knowingly" engage in a course of conduct that would cause the plaintiff to fear him because he never actually knew that the plaintiff feared him. He also contends that his actions did not constitute a "course of conduct" because they were not predatory in nature. Furthermore, he contends that there was no evidence in the record that the plaintiff subjectively feared for her physical safety because she continued to speak and interact with the defendants after he requested the nude photographs. Finally, he contends that there was no evidence in the record to support the court's finding that he would continue to stalk the plaintiff. We are not persuaded.

The following additional facts are necessary to resolve this claim. In its memorandum of decision, the court found "that the [husband] engaged in multiple acts, through electronic media and in person, in which he followed, lay in wait for, monitored, observed, threatened, harassed, and communicated with the [plaintiff]. He knowingly engaged in a course of conduct directed at the [plaintiff] that would cause a reasonable person to fear for such person's physical safety." In making

these findings, the court noted that it "had ample opportunity to observe the conduct, demeanor and attitude of the witnesses, to evaluate the testimony, and to relate the testimony of the witnesses to the exhibits in the case. In considering the evidence . . . the court also drew reasonable inferences from the facts established in this case." The court fully credited the testimony of the plaintiff, who cried during examination, and the relevant representations in the plaintiff's affidavit that accompanied the application for an ex parte protection order.

The husband argues that the court improperly focused on his alleged request for nude photographs from the plaintiff and contends that this by itself does not constitute stalking. In its memorandum of decision, however, the court not only found that the husband had requested nude photographs, but also that he had sent the plaintiff harassing e-mails, came to her place of employment, inquired into the plaintiff's personal life, attempted to discover where the plaintiff lived, verbally and physically confronted the plaintiff, and left the plaintiff a letter and a gift of money at her place of employment. Furthermore, the court found that after physically accosting the plaintiff at her place of employment, the husband sent a threatening e-mail to the plaintiff, stating that she was "on very thin ice." Following this e-mail, the plaintiff, in her affidavit, which the court credited, stated that she felt threatened and was worried about what the husband would do next.

The husband argues that he did not act "knowingly" because he did not know why the plaintiff cut off communication with him or that she feared him. According to the husband, he cannot knowingly engage in a course of conduct that would cause a reasonable person to fear for her physical safety if he did not know that his conduct caused such fear in the plaintiff. We do not agree. The husband did not need to know that the plaintiff herself was actually fearful; the plaintiff was required to prove only that there were reasonable grounds to believe that the husband was aware that his conduct would cause a reasonable person to fear for his or her physical safety. Such awareness can be proven by circumstantial evidence and by the reasonable inferences that can be drawn therefrom. See *State* v. *Torres*, supra, 111 Conn. App. 581–82. The court found, on the basis of the plaintiff's testimony, that the husband physically accosted the plaintiff, threatened the plaintiff, and requested nude photographs from the plaintiff. On the basis of this evidence, the court could have reasonably inferred that the husband was aware that his actions would cause a reasonable person to fear for her physical safety. Accordingly, there was sufficient evidence to find that reasonable grounds existed to believe that the husband acted "knowingly."

The husband further argues that his actions did not

amount to "a course of conduct" because requesting nude photographs by itself is not sufficient to establish "a course of conduct" and because his actions were not of a predatory nature. A "course of conduct" has a broad definition, "including . . . (1) follows, lies in wait for, monitors, observes, surveils, threatens, harasses, communicates with or sends unwanted gifts to, a person . . . ." General Statutes § 53a-181d (a). The court found and the record supports that the husband threatened the plaintiff by e-mail, harassed the plaintiff by requesting nude photographs, communicated with the plaintiff, and left the plaintiff an unwanted gift of cash. On the basis of this record, there was sufficient evidence to find that reasonable grounds existed to believe that the husband engaged in "a course of conduct" as defined by § 53a-181d (a).

As for the husband's argument that "a course of conduct" must be predatory in nature, he does not cite to any case law in support of this proposition. To the extent that this court has required a defendant's conduct to be predatory in nature as an element of stalking, we note that our case law is limited to interpreting a prior version of § 53a-181d,[8] which at the time only prohibited a person from wilfully and repeatedly following or lying in wait for another person. See *State* v. *Samms*, 139 Conn. App. 553, 562, 56 A.3d 755 (2012), cert. denied, 308 Conn. 902, 60 A.3d 287 (2013). Thus, under the prior version of the statute, "following" had to be of a predatory nature because a person could not be convicted of stalking in the second degree if the following was aimless, unintentional or accidental. Id.

The statute was subsequently amended to broaden its scope. It is no longer limited to "following and lying in wait," and encompasses a wider variety of conduct. We decline to extend our prior case law to the current statute, which is substantively different from its prior version.

Furthermore, the husband argues that there was insufficient evidence that the plaintiff subjectively feared for her physical safety because she continued to interact with the defendants after he requested the nude photographs from her. We disagree with the husband's argument for two reasons. First, as amended, § 53a-181d does not require a showing of subjective fear; it only requires that the defendant's conduct was such that a reasonable person would fear for his or her physical safety in similar circumstances. Compare General Statutes (Rev. to 2012) § 53a-181d (a) ("causes such other person to reasonably fear for his physical safety"), with General Statutes § 53a-181d (b) (1) ("that would cause a reasonable person to fear for such person's physical safety"). The previous requirement to prove that the victim was subjectively fearful was eliminated from the statute by No. 12-114, § 12, of the 2012 Public Acts.

Moreover, even if subjective fear remained an element of § 53a-181d, there was sufficient evidence in the record from which the court reasonably could have concluded that there were reasonable grounds to believe that the plaintiff subjectively feared for her physical safety. The court credited the plaintiff's affidavit in which she stated that she felt threatened after the husband grabbed her arm at her place of employment and subsequently sent her a threatening e-mail. From this, the court reasonably could have inferred that there were reasonable grounds to believe that the plaintiff feared for her physical safety.

Finally, the husband argues that there was no evidence presented at the hearing that supported the court's finding that he would continue to stalk the plaintiff. The husband contends that because he testified at the hearing that he had no intention of ever communicating with the plaintiff again, there was no evidence in the record to support the court's finding that he would continue to stalk the plaintiff.

The court, however, specifically stated that it did not find his testimony credible. Credibility determinations are for the finder of fact and we will not upset them. See *State* v. *DeMarco*, 311 Conn. 510, 521 n.4, 88 A.3d 491 (2014) ("the trial court has discretion to reject even uncontested evidence" [internal quotation marks omitted]); *State* v. *Miranda*, 260 Conn. 93, 110, 794 A.2d 506 (2000) ("trial judge is the sole arbiter of the credibility of the witnesses" [internal quotation marks omitted]), cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). The court further found that the husband was "unnaturally obsessed" with the plaintiff, which the court reasonably could have inferred from the evidence produced at the hearing, including the husband's continued attempts to contact the plaintiff and his request for nude photographs of her. On the basis of this "obsession," the court reasonably inferred that the husband would continue his previous course of conduct. Although this evidence may or may not have been sufficient to convict the husband of the crime of stalking in the second degree, the court here only had to find that there were reasonable grounds to believe that the husband would continue his course of conduct. Thus, the court's factual findings were supported by the record and these findings were sufficient to support the court's determination that there were reasonable grounds to believe that the husband would continue his course of conduct. Accordingly, we conclude that the court properly granted the application for an order of civil protection against the husband on the basis of conduct constituting stalking in the second degree.

B

The wife similarly argues that there were not reasonable grounds to believe that she stalked the plaintiff as

defined by § 53a-181d (b) (1). Specifically, she contends that she did not act "knowingly" because she did not know that the plaintiff feared for her physical safety. She also contends that she did not engage in "a course of conduct" because her actions were not of a predatory nature and the only action she took was to ask the plaintiff to talk. She further contends that there was no evidence that the plaintiff feared for her physical safety, only that she felt uneasy. Lastly, the wife contends that there was no evidence that she would continue to have any contact with the plaintiff. In light of the plaintiff's relatively low burden of persuasion, we disagree.

The following additional facts are necessary to resolve this claim. In the affidavit attached to the application for a civil protection order, the plaintiff discussed both defendants' conduct. Although the plaintiff focused on the husband's inappropriate request for nude photographs, she also stated that the e-mails and letters that she received from the defendants were consistently worded in the plural: "what did we do," "we only extended kindness," and "we're so upset you won't speak to us." The plaintiff also averred that the wife was with the husband when he came to the restaurant to physically and verbally confront her and that the wife also confronted her. The plaintiff concluded her affidavit by stating that she felt threatened.

With respect to the application for a civil protection order against the wife, the plaintiff testified at the hearing that even if the husband could not speak to her, "I don't know what she'll do. . . . It just is an uneasy feeling to know that either one of them can speak with me." Although the plaintiff never received an inappropriate Facebook message directly from the wife, the wife did know about and condoned the husband's inappropriate messages. The wife also acknowledged that "when someone unfriends you on Facebook that's an indication that the person no longer wants to communicate with you," but that she did not stop reaching out to the plaintiff. In addition to knowing about the e-mails that her husband sent the plaintiff, the wife left a letter and a gift of money for the plaintiff at her place of employment.

Furthermore, the wife admitted that without a civil protection order, she would continue to frequent the plaintiff's place of employment, although she would first call to ask about the plaintiff's whereabouts. According to the court, "[the wife] appeared to be oblivious to the probable effect such inquires would have on the [plaintiff's] status as an employee of the restaurant. . . . [The wife] has no recognition of the wrongfulness of her conduct or her husband's conduct . . . ."

Thus, the court found that the wife "engaged in multiple acts, through electronic media and in person, directly or indirectly, as well as through a third party (her husband) in which she followed, lay in wait for,

monitored, observed, threatened, harassed, and communicated with the [plaintiff]. [The wife] knowingly engaged in a course of conduct directed at the [plaintiff] that would cause a reasonable person to fear for such person's physical safety."

Similar to the husband, the wife argues that she did not act "knowingly" because she did not know why the plaintiff ended communication with her or that she was fearful of her. As we previously discussed, the plaintiff was required only to prove that there were reasonable grounds to believe that the wife was aware that her conduct would cause a reasonable person to fear for her physical safety. Such intention can be proven by circumstantial evidence and by the reasonable inferences that can be drawn therefrom. See *State* v. *Torres*, supra, 111 Conn. App. 581–82. The court found, on the basis of the plaintiff's testimony, that the wife, through a third party (her husband), sent harassing letters and e-mails, which she was aware of and condoned, to the plaintiff. Although this evidence may not alone be sufficient to establish beyond a reasonable doubt that the wife acted "knowingly," the court could have reasonably inferred that by indirectly sending harassing and threatening e-mails, the wife knew or should have known that those e-mails would cause a reasonable person to fear for her physical safety.

The wife further argues that her actions did not amount to "a course of conduct" because the only action she took was to request that the plaintiff speak with her and this action was not predatory in nature. The court found, however, that the wife's actions were not limited to her requesting that the plaintiff speak with her. The evidence in the record shows that the wife, with and through her husband, sent the plaintiff harassing e-mails. Although the e-mails were sent from the husband's e-mail account, they were always written in the plural: "what did *we* do," "*we* only extended kindness," "*we're* so upset you won't speak to *us*," and "[we] *were* happy not to see [the plaintiff]." (Emphasis added.) These e-mails alone are sufficient evidence to establish that there were reasonable grounds to believe that the wife engaged in two or more acts "in which a person directly, *indirectly or through a third party* . . . (1) . . . threatens, harasses, [or] communicates with . . . a person . . . ." (Emphasis added.) General Statutes § 53a-181d (a). The wife's knowledge of the e-mails and the use of the plural in them provide reasonable grounds to believe that the wife, indirectly and through her husband, harassed and communicated with the plaintiff. Additionally, the record reveals that the wife directly left both a letter and an unwanted gift of money for the plaintiff at her place of employment after the wife was aware that the plaintiff no longer desired to communicate with the defendants. Accordingly, there was sufficient evidence that the wife engaged in "a course of conduct" as defined by § 53a-181d (a) (1).[9]

The wife next argues that there was insufficient evidence that the plaintiff subjectively feared for her physical safety because the wife only made the plaintiff feel "uneasy." We disagree. As we stated in part II A of this opinion, § 53a-181d, as amended by No. 12-114, § 12, of the 2012 Public Acts, does not require a showing of subjective fear. Furthermore, even if subjective fear remained an element of § 53a-181d, there was sufficient evidence in the record from which the court reasonably could have concluded that there were reasonable grounds to believe that plaintiff subjectively feared for her physical safety. The court credited the plaintiff's affidavit in which she stated that she felt threatened by the defendants, including the wife, after they confronted her at her place of employment. From this evidence, the court could have reasonably inferred that there were reasonable grounds to believe that the plaintiff feared for her physical safety.

Finally, the wife argues that there was no evidence presented at the hearing that supported the court's finding that she would continue to stalk the plaintiff. The wife contends that her testimony at the hearing shows that although she would continue to frequent the plaintiff's place of employment as a customer, she would only do so after calling to ensure that the plaintiff was not working that day. In its discretion, the court did not credit the wife's testimony that she wanted no further contact with the plaintiff; rather, the court drew a reasonable inference from this testimony that the wife would continue to harass the plaintiff by coming to her place of employment. We determine that the court's factual findings were supported by the record and these findings were sufficient to support the court's determination that there were reasonable grounds to believe that the wife would continue her course of conduct.

In light of the foregoing, the court's decision to grant the application for a civil protection order against the wife does not contain unsupported findings or reflect a misapplication of the law. Accordingly, we conclude that the court properly granted the application for an order of civil protection against the wife on the basis of behavior constituting stalking in the second degree.

The judgments are affirmed.

In this opinion the other judges concurred.

* February 18, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Unlike civil restraining orders issued pursuant to General Statutes § 46b-15, § 46b-16a does not require that a specified relationship exists between the applicant and the respondent.

[2] In accordance with the spirit and intent of General Statutes § 46b-142 (b), the name of the plaintiff involved in this appeal is not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[3] We note that although the plaintiff filed two separate applications for civil protection orders, the affidavit attached to each was identical.

[4] In making its findings, the court relied on the affidavit submitted by the plaintiff with her applications for the civil protection orders. The defendants

do not claim on appeal that the court was prohibited from considering the plaintiff's affidavit as evidence in this case. Moreover, all of the allegations in the affidavit were independently testified to by the plaintiff at the hearing on the applications for the civil protection orders.

[5] Although the trial court wrote two separate opinions, the fact sections of both opinions are nearly identical. Although we quote from both memoranda, we analyze the sufficiency of the evidence claims for each defendant separately and we resolve each claim only on the basis of its corresponding record.

[6] In its memoranda, the court found that every element of stalking in the second degree was met under both § 53a-181d (b) (1) and (b) (2). The court similarly determined that the defendants had stalked the plaintiff in the third degree under § 53a-181e. Because we find that there was sufficient evidence to support the court's determination that there were reasonable grounds to believe that the defendants stalked and would continue to stalk the plaintiff pursuant to § 53a-181d (b) (1), we need not decide whether there was sufficient evidence to support the court's determination that there were reasonable grounds to believe that the defendants stalked and would continue to stalk the plaintiff pursuant to §§ 53a-181d (b) (2) and 53a-181e.

[7] General Statutes § 53a-181d (b) provides in relevant part: "A person is guilty of stalking in the second degree when:

"(1) Such person knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for such person's physical safety or the physical safety of a third person . . . ."

[8] General Statutes (Rev. to 2012) § 53a-181d (a) provides in relevant part: "A person is guilty of stalking in the second degree when, with intent to cause another person to fear for his physical safety, he wilfully and repeatedly follows or lies in wait for such other person and causes such other person to reasonably fear for his physical safety. . . ."

[9] As for the wife's argument that the evidence needed to demonstrate that her conduct was predatory in nature, we do not agree. See part II A of this opinion.